MARÍA LÓPEZ RUDÓN Y JOSÉ TORRES TORRES, demandantes y apelantes, *v.* ANTONIA LÓPEZ, demandada y apelada.

No. 6571.—*Sometido:* Febrero 14, 1935. *Resuelto:* Abril 3, 1935.

*González Fagundo & González, Jr.,* abogados de los apelantes; *Luis Muñoz Morales,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Los demandantes, dueños en común proindiviso de una casa de mampostería de dos plantas que se describe en la demanda, ejercitan la acción de desahucio en precario para obtener el lanzamiento de la Sra. Antonia López de la referida finca. Se alega en la demanda que la demandada desde algún tiempo viene detentando la posesión material del referido inmueble contra la expresa voluntad de los demandantes y sin pagar canon ni merced alguno y que se ha negado y se niega a desocupar dicho inmueble, a pesar de los

requerimientos de los demandantes. Negó la demandada que estuviese detentando la posesión material de la finca y alegó que ocupaba una parte de la misma en concepto de viuda de don Miguel Morales Santiago, como dueña de un derecho de *homestead* en la planta alta de la referida casa, y no habiéndosele reconocido el derecho de *homestead* se ha visto obligada a interponer la correspondiente acción contra el aquí demandante José Torres.

María López Rudón y Miguel Morales Santiago eran dueños en común proindiviso del susodicho inmueble. Miguel Morales, estando casado en segundas nupcias con la demandada Antonia López, otorgó un pagaré al portador, y para garantizarlo gravó con hipoteca su condominio sobre la finca referida. En junio de 1932, Julián Dávila, tenedor del pagaré hipotecario, ejecutó la hipoteca, adquiriendo por adjudicación el condominio de Morales. Cuando se llevó a cabo la ejecución, Morales había muerto, habiéndose seguido el procedimiento ejecutivo contra su sucesión. Después del fallecimiento de Miguel Morales la viuda demandada ha continuado ocupando dicho local, en el que, según alega, tiene constituído su hogar seguro. Negóse Julián Dávila a reconocer el derecho de *homestead* oportunamente alegado por la demandada y habiendo vendido su condominio al demandante José Torres Torres, la viuda inició una acción reclamando su derecho ante la Corte Municipal de Caguas, donde radica la finca. Cuando se celebró la vista de esta causa, esta acción se encontraba pendiente en la corte municipal.

En 29 de abril de 1933 la Corte de Distrito de Humacao dictó sentencia declarando sin lugar la demanda.

■■ Se alega en primer término que la corte inferior erró al estimar que existe un principio de evidencia que demuestra que la posesión de la demandada no es precaria y que el conflicto que ella levanta debe ventilarse en juicio ordinario y no dentro de los límites de este procedimiento de desahucio.

Para el ejercicio de la acción de desahucio los demandantes, descansan exclusivamente en la alegada detentación de la propiedad. La demandada se defiende diciendo que retiene la posesión material de la finca en virtud de un derecho y no ejercitando acto alguno de detentación. Se arguye que la demandante carece de título o derecho para acogerse a la exención autorizada por los artículos 541 y 542 del Código Civil, edición 1930. Dispone este último artículo que la exención continuará después de la muerte del jefe de familia, a beneficio de la esposa o esposo superviviente mientras él o ella continúen ocupando dicho hogar seguro y después de la muerte de ambos, a beneficio de sus hijos, hasta que el menor de éstos haya llegado a la edad de veintiún años. De acuerdo con este artículo, que es sustancialmente igual a las secciones segunda y quinta de la ley de *homestead* del estado de Illinois, aprobada en 1872, el derecho de la viuda es simplemente uno de ocupación durante su vida. *Merritt* v. *Merritt,* 97 Ill. 243. Bajo las decisiones de la Corte Suprema del referido estado, cuando uno de los esposos muere teniendo constituído su *homestead,* el derecho del cónyuge superviviente surge inmediatamente para continuar ocupando la propiedad. Al morir uno de los cónyuges el viudo o viuda por ministerio de la ley queda *eo instanti* investido del derecho de *homestead.* *Kyle* v. *Wills,* 166 Ill. 501; *Brokaw* v. *Ogle,* 170 Ill. 115; *Browning* v. *Harris,* 99 Ill. 456.

Miguel Morales murió siendo dueño de un interés proindiviso en la propiedad que se alega constituye el *homestead.* El acreedor hipotecario Julián Dávila ejecutó la propiedad. El título del esposo fenecido que sirve de base a la continuación de la exención de *homestead* a favor de su esposa, pasó al acreedor ejecutante, de quien deriva su título el demandante José Torres Torres. No puede decirse, con respecto a este demandante, que la viuda esté detentando la propiedad, si, como alega en la contestación, permanece allí protegida por su alegado derecho de *homestead.*

■■ En cuanto a la demandante María López Rudón, condueña de la propiedad, surgen otras cuestiones que merecen detenida consideración. Las decisiones de los tribunales no se muestran de acuerdo con respecto a si puede establecerse o no un derecho de *homestead* en una propiedad proindivisa. Son muchos los tribunales que sostienen la afirmativa. Entre ellos figura la Corte Suprema de Illinois. En el caso de *Brokaw* v. *Ogle,* supra, la referida corte se expresó así:

"Hay conflicto en las autoridades sobre la cuestión de si puede haber un hogar seguro en un condominio proindiviso de una finca. Es decir, si un copartícipe puede alegar con éxito el derecho de hogar seguro en una comunidad o si tal derecho puede existir únicamente cuando la finca pertenece en su totalidad a una sola persona. (Citas.) Nos inclinamos a creer que un interés proindiviso, acompañado de la posesión exclusiva, puede dar derecho al hogar seguro. (Citas.) La objeción que generalmente se suscita a la concesión del derecho de hogar seguro en una participación proindivisa es que al separarse el hogar seguro los derechos de los copartícipes pueden ser perjudicados y la parte específica separada como hogar seguro puede que al hacerse la partición corresponda a uno de los otros copartícipes. Mas ésta es una cuestión de la cual tan sólo los demás comuneros pueden quejarse, y si se respetan sus derechos, aquéllos que no forman parte de la comunidad no pueden presentar objeción alguna. El fin es proteger la finca así separada de embargos en ejecución de sentencia y subastas, y no conceder un título definitivo de la misma. El que posee en común con una persona que alegue el derecho de hogar seguro, no puede atacar el derecho de este último a adquirir el hogar seguro en la finca mientras a tal comunero se le permita disfrutar de todos sus derechos y privilegios en dicha propiedad como tal comunero.' (Citas.) "

En el caso citado, el Juez Phillips emitió una opinión disidente en la cual sostiene que el derecho de *homestead* no puede constituirse en una propiedad poseída en común proindiviso. De la opinión disidente emitida en este caso copiamos lo que sigue:

"El comunero no es dueño de nada separadamente y no podría asignársele nada que no perteneciera por igual a los demás copar-

tícipes. Si la intención de la legislatura fué incluir a los comuneros entre las personas con derecho a un hogar seguro en terrenos así poseídos, ella hubiera provisto el método para hacerlo. De conformidad con el artículo primero de la ley 'dicho *homestead,* y todo derecho o título sobre el mismo, estarán exentos de embargo, sentencia, incautación o ejecución para el pago de sus deudas o para otros fines, así como de las leyes relativas a enajenaciones, descendencia y distribución, y excepción hecha también de lo que más adelante se dispone.' Aunque fija ciertas limitaciones y derechos inherentes al hogar seguro, el estatuto guarda silencio respecto al hogar seguro sobre terrenos poseídos en común por dos o más partícipes. Guardando silencio a este respecto, aquellos estados que resuelven que una finca poseída en común da derecho a un hogar seguro en favor de uno de los comuneros, tienen necesariamente que agregar algo al estatuto y quitarle algo. Tal derecho no puede estar exento de las leyes relativas a enajenaciones, toda vez que si la finca no puede ser dividida, el comunero puede solicitar que la misma sea vendida. Eso violaría el espíritu y contexto de la ley, y haría desaparecer uno de los derechos y propiedades del hogar seguro. Si se tratara de separar el interés de un comunero en la forma prescrita por el estatuto, el hogar seguro así separado podría ser inmediatamente destruído por el comunero al solicitar la partición o venta de la finca en caso de que tal cosa no fuese posible. Por tanto, se hace necesaria la adición de ciertas palabras al estatuto que concede un hogar seguro en la finca o solar pertenecientes o poseídos y ocupados como residencia. Si una finca o solar pertenece al jefe de familia nadie más tiene interés en los mismos. Si no pertenece, entonces no puede existir el derecho de hogar seguro. La legislatura no ha dispuesto nada con respecto a un caso de esta índole y no incumbe a nosotros hacerlo. Si surgen injusticias, ellas podrían ser subsanadas mediante legislación que cubra las exigencias de dichos casos. La mejor interpretación que puede darse a este estatuto es limitarlo a casos en que la posesión o tenencia de la cosa resida en una sola persona.''

El criterio sostenido por la mayoría de la corte en el caso citado fué ratificado más tarde en *Hertz* v. *Buchmann,* 177 Ill. 553, con la aprobación unánime del tribunal. Al establecer esta doctrina la corte reconoce que ningún condueño puede hacer uso de la exención en perjuicio de los derechos de cualquier otro condueño ni obstaculizarle en los procedimientos de división de la propiedad. Este criterio, que comparten

los tribunales que sostienen la afirmativa, nos parece justo y acertado. En el mencionado caso de *Hertz* v. *Buchmann,* supra, el Juez Magrudger, hablando a nombre del tribunal, se expresó así:

"Se ha sostenido que puede haber un *homestead* en un interés proindiviso en propiedad inmueble, o en otras palabras, que una propiedad poseída en común apoyará un derecho de *homestead* en uno de los condueños. Pero esta doctrina nunca se ha hecho efectiva en perjuicio de los justos derechos de los demás condueños. La exclusiva posesión de un condueño que se acoge al *homestead,* es un derecho contra las reclamaciones de los acreedores, pero no contra la demanda del otro condueño para dejarlo en la posesión proindivisa. Un condueño que reclama el *homestead,* no teniendo un derecho exclusivo contra el otro condueño, puede ser obligado por el último a la división de la propiedad. Si la propiedad es susceptible de partición, de modo que pueda salvarse el *homestead* y proteger el derecho del condueño, los derechos de ambas partes pueden ser fácilmente determinados. Pero si la propiedad no es susceptible de partición, un tribunal de equidad tiene poder para ordenar una venta, con el propósito de dividir el producto de la misma."

En cuanto a la posesión de la propiedad, se ha sostenido que no es necesario que sea exclusiva para que el condómine pueda constituir su *homestead*. *Robson* v. *Hough*, 56 Ark. 621, 20 S.W. 523; *Thompson* v. *King*, 54 Kan. 9, 14 S.W. 925; C. J., párrafo 165, página 849. Realmente no conocemos ninguna razón de peso que haga necesaria la posesión exclusiva.

La demandante María López Rudón, condueña de la propiedad donde se reclama el *homestead,* no hubiese podido ejercer la acción de desahucio contra su antiguo condómine Miguel Morales, quien en su carácter de dueño de un condominio de la finca, tenía derecho a conservar su posesión. En esa finca continúa viviendo la viuda, quien tiene derecho a la cuota usufructuaria determinada por la ley. No se ha demostrado que María López Rudón resulte perjudicada con la permanencia de Antonia López en la finca referida. El derecho de *homestead* puede ser reconocido en favor de la

viuda, sin lesionar los derechos de María López Rudón, quien conserva su condominio. No parece que la demandada haya realizado ningún acto de detentación. Permanece en su hogar al amparo de un alegado derecho de hogar seguro que puede establecer contra el demandante José Torres Torres. No procede, por tanto, la acción de desahucio para obligarla a abandonar la propiedad.

Se arguye que al constituirse la hipoteca el esposo de la demandada, Miguel Morales, hizo constar que dicho inmueble no estaba afecto al derecho de *homestead* en favor del deudor ni de persona alguna en absoluto. Esta manifestación, hecha exclusivamente por Miguel Morales, no puede perjudicar el derecho de *homestead* una vez constituído sobre la propiedad. La demandada no intervino en el contrato de hipoteca, por tratarse de un bien privativo de su esposo, quien sin el consentimiento de su mujer no podía disponer del *homestead* ni hacer ninguna admisión en perjuicio de este derecho.

Arguyen los apelantes que en Puerto Rico la ley solamente define el *homestead* rural y no el urbano, y que la corte *a quo* cometió error al estimar que existe en Puerto Rico el *homestead* urbano. El hogar seguro, de acuerdo con nuestra ley, puede constituirse en una estancia, plantación, o *lot of land*. La palabra *lot,* en su sentido general, comprende cualquier pieza de terreno, lo mismo en una zona rural que en una urbana. En *Monagas* v. *Hedilla,* 40 D.P.R. 852, resolviendo una cuestión idéntica a la que ahora se promueve, dijimos que la ley no establece distinción alguna entre las fincas urbanas y rurales. Se desestima el alegado error.

*Debe confirmarse la sentencia apelada.*