CRÉDITO Y AHORRO PONCEÑO, demandante y apelante, *v.* MERCEDES BEVERAGGI, demandada y apelada.

Núm. 7939.—*Sometido:* Mayo 3, 1939. *Resuelto:* Noviembre 22, 1939.

*M. Marcos Morales,* abogado del apelante; *M. Guzmán Texidor,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La demanda de este pleito sustancialmente alega: que el Banco demandante es dueño de cierta finca urbana que describe, que la demandada posee dicha finca en precario sin pagar canon o merced alguno; que el demandante la ha requerido repetidas veces para que la desocupe y deje a su libre disposición, y que aunque ha ofrecido mudarse y desocuparla, hasta la fecha no lo ha hecho. Termina la demanda con súplica de que se decrete el desahucio, con imposición de costas, desembolsos y honorarios de abogado a la demandada.

La contestación a la demanda jurada de que hemos hecho mérito acepta todas las alegaciones del demandante y como materia de defensa especial expone que la demandada y Francisco Alsina Santos contrajeron matrimonio en el año 1924 y fueron a vivir la casa en cuestión, constituyendo en ella su *hogar seguro.* Que al fallecimiento de su citado esposo, la demandada continuó y aún continúa ocupando la finca como su hogar seguro en compañía de su hijo menor de edad Luis Alsina, habido en su ameritado matrimonio; "que si bien es verdad que su fenecido esposo traspasó la finca descrita en el párrafo 2 de la demanda a don José Domingo Rivera de quien trae causas el demandante Crédito y Ahorro Ponceño, ni la demandada ni su esposo recibieron ninguna clase de consideración por dicho tiaspaso y nunca ni ella ni su esposo traspasaron ni renunciaron en favor de nin-

guna persona, ni tácita ni expresamente el derecho de *home-stead* que tenían en la finca descrita, ni nunca recibieron de José Domingo Rivera ni del demandante ninguna clase de consideración por su derecho de *homestead.*" Alega además la demandada que la finca en controversia tiene un valor superior a $500, y termina con la siguiente súplica.

"Por tanto, suplico a la Hon. Corte dicte sentencia declarando que la demandada tiene constituído su hogar seguro en la finca descrita en la demanda, y declarando asimismo con lugar la demanda de desahucio; pero condicionada a que dicha sentencia no podría ejecutarse hasta tanto el demandante satisfaga a la demandada la suma de $500 importe del derecho de *homestead,* hogar seguro, que tiene en la finca descrita, *o que se dicte sentencia compatible con las alegaciones de esta contestación.*"

Contra la reseñada contestación interpuso el demandante la excepción previa de insuficiencia de hechos para constituir una oposición a la demanda, o una reconvención.

Fué el caso a juicio y la corte desestimó la excepción previa y dictó sentencia por los méritos de la prueba, declarando sin lugar la demanda, con costas al demandante, sin incluir honorarios de abogado.

Apeló el demandante para ante este Tribunal y en su alegato expone el siguiente señalamiento de errores:

"1. La Corte de Distrito de Guayama erró al declarar con lugar la contestación a la demanda y sin lugar la demanda, imponiendo las costas, sin incluir honorarios de abogado, a la parte demandante apelante.

"2. La Corte *a quo* erró al no declarar con lugar la excepción previa de que la contestación no aduce hechos suficientes para constituir una buena defensa a la demanda.

"3. La Corte *a quo* erró por indebida apreciación de la prueba, no sosteniendo la evidencia aportada la conclusión a que llega la Corte, de que existe un derecho de hogar seguro en dicha finca, que no ha sido renunciado."

Discutiremos conjuntamente los tres señalamientos de error.

■ Conocemos ya las alegaciones de la petición. Hagamos ahora una síntesis de la prueba que tuvo ante sí la corte sentenciadora.

De la evidencia resulta que Francisco Alsina Santos, siendo soltero, mientras vivía en concubinato con la demandada, compró la casa en litigio, estableciendo en ella su hogar seguro; que más tarde contrajeron matrimonio allá por el 8 de septiembre de 1925 y continuaron viviéndola; que luego la vendió a José Domingo Rivera y en la escritura que se otorgó al efecto el 26 de abril de 1930 ante el notario Miguel Guzmán Texidor, se expresó que el vendedor Francisco Alsina era casado con doña Mercedes Beveraggi, quien no concurría al otorgamiento por tratarse de bienes privativos del vendedor. Después de describir la finca y su libertad de cargas, se consignó en la escritura:

"Don Francisco Alsina vende, cede, renuncia y traspasa a favor de don José Domingo Rivera la finca urbana que en esta escritura se describe, o sea el solar y la casa con todos sus anexos."

Se expresó que la venta se llevaba a efecto por el precio de $1,600 que el vendedor confesaba haber recibido a su entera satisfacción antes del acto; pero no se mencionó el derecho de hogar seguro.

A pesar de esta venta continuaron Alsina y la demandada ocupando la casa sin que exista evidencia de que pagasen merced o canon alguno al comprador.

El 27 de abril de 1931 José Domingo Rivera constituyó hipoteca sobre la finca a favor del banco demandante para garantizarle el pago de la cantidad de $1,338.48 y sus intereses. El 28 de abril de 1935 falleció Alsina y la demandada y su hijo continuaron ocupando la casa. El 26 de enero de 1937 José Domingo Rivera cedió la finca al demandante en pago de la ameritada hipoteca y el 29 de julio del año siguiente se radicó la demanda de este pleito. Durante todas las fechas mencionadas la demandada ha venido ocupando sin interrupción la casa en controversia sin pagar canon o merced alguna.

La Ley de *Homestead* que imperaba cuando Alsina estableció su hogar seguro en la casa en litigio allá por el año 1924, lo mismo que cuando la vendió a José Domingo Rivera el 26 de abril de 1930, era la aprobada el 12 de marzo de 1903 ·(Comp. 1000–1005). Artículo 541 y siguientes del Código Civil (ed. 1930).

Toda la argumentación del apelante gira alrededor de un concepto equivocado con respecto al alcance y extensión de la Ley de *Homestead* de 1903. Dice el apelante en la página 41 de su alegato:

"El derecho de hogar seguro no existe en el derecho común, este privilegio es puramente estatutario, creado por una ley o estatuto especial, y su naturaleza y extensión dependen en absoluto de la ley que lo crea; y no es esta ley de 'homestead' una que vaya por encima de todos los preceptos de nuestro derecho sustantivo, de nuestro Código Civil, base de la familia, que regula los derechos de la familia y los derechos de la propiedad, ni tampoco puede ir sobre los preceptos de la Ley Hipotecaria, que regula los derechos en la propiedad. Por ello, en ausencia de alguna ley o disposición legal que prohiba al marido disponer de la propiedad en que se tenga establecido el hogar seguro, no hay nada que impida al marido el hipotecar o vender dicha propiedad, y puede hipotecarla y venderla en Puerto Rico, sin el consentimiento de la esposa, cuando se trata, como en este caso, de una propiedad privada del marido."

Sin embargo, el artículo 3 de la Ley de *Homestead* de 1903 (artículo 543 del Código Civil, ed. 1930), contrario a la opinión del apelante, dice así:

"No será válida ninguna renuncia o traspaso de una finca así exentada, a menos que se consigne expresamente en la escritura de traspaso por *dicho jefe de familia, su esposo o esposa, si él o ella lo tuvieren, o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso, o sin la orden de la corte de distrito disponiendo el traspaso del título de la propiedad,* siempre que la exención se haga extensiva a un hijo o hijos."

De acuerdo con el precepto transcrito, una vez constituído el hogar seguro sobre una finca, ya perteneciere privativamente a uno de los cónyuges, ya fuere de la sociedad de

gananciales, el derecho de hogar seguro no puede ser traspasado o renunciado sin el concurso de ambos cónyuges, a menos que al verificarse la enajenación los cónyuges abandonaren la posesión o hicieren entrega material de la finca al comprador.

En el caso de autos, el esposo otorgó la escritura sin hacer mención del derecho de *homestead*. Tampoco concurrió la esposa, quien, como hemos visto, en unión de su marido primeramente, y viuda después, continuó ocupando la casa con el hijo habido en el matrimonio.

En el caso de *Wilcox* v. *Registrador,* 44 D.P.R. 161, este tribunal, interpretando el artículo 3 de la Ley de *Homestead* de 1903, siguiendo la jurisprudencia establecida en el de *Ramírez* v. *Registrador,* 39 D.P.R. 269, resolvió:

"Cuando un bien privativo del esposo es ocupado por la familia como residencia, la renuncia del derecho a hogar seguro sobre esa propiedad debe hacerse por ambos cónyuges." (*Syllabus.*)

Posteriormente, en el caso de *López Rudón* v. *López,* 48 D.P.R. 324, 331, volvió a sostenerse la necesidad del concurso de la esposa para la validez de una renuncia al derecho de *homestead* sobre una propiedad privativa del esposo. Dijo entonces este tribunal:

"Se arguye que al constituirse la hipoteca, el esposo de la demandada, Miguel Morales, hizo constar que dicho inmueble no estaba afecto al derecho de *homestead* en favor del deudor ni de persona alguna en absoluto. Esta manifestación, hecha exclusivamente por Miguel Morales, no puede perjudicar el derecho de *homestead* una vez constituído sobre la propiedad.

"La demandada no intervino en el contrato de hipoteca, por tratarse de un bien privativo de su esposo, quien sin el consentimiento de su mujer no podía disponer del *homestead* ni hacer ninguna admisión en perjuicio de este derecho."

Se observará que en el caso de López Rudón, supra, al igual que en el que nos ocupa, el derecho de *homestead* fué reclamado por la esposa por primera vez después del fallecimiento del marido, dueño privativo del inmueble.

El precepto del artículo 3 de la Ley de *Homestead* de 1903, que exige el consentimiento expreso de ambos cónyuges para la validez de la renuncia o transmisión del derecho de hogar seguro, no es exclusivo de Puerto Rico, siendo por el contrario la regla imperante en la mayoría de las jurisdicciones del continente.

"En casi todos los estados el poder del propietario del *homestead* está restringido hasta cierto punto, pero hay una gran variación en el grado de restricción impuesta. La disposición usual es la de que el dueño del *homestead*, si es casado, no puede enajenar la propiedad sin el concurso de su cónyuge." 4 *Encyclopedia of Social Sciences*, 443.

Un estatuto que así restringe el derecho de uno de los cónyuges de disponer libremente de sus bienes privativos, parece a primera vista opresivo e inconstitucional, pero cualquier duda sobre su validez se desvanece a poco que reflexionemos que desde el último cuarto del siglo pasado se inició en la jurisprudencia tanto angloamericana como europea la tendencia a socializar el derecho, supeditando los del invididuo al bienestar de la sociedad. Esta tendencia, que los juristas modernos denominan "Socialización del Derecho", parece haber llegado a la plenitud de su desarrollo, y como señala el Dean Roscoe Pound en su artículo *"The End of Law"*, 27 Harvard Law Review 226, ha producido los siguientes cambios en el Derecho: (1) Limitaciones en el uso de la propiedad y el llamado ejercicio antisocial de derechos; (2) limitación de la libertad de contratación; (3) limitación del *ius disponendi*; (4) limitación sobre el derecho del acreedor o del que ha sufrido un daño a exigir pago o indemnización; (5) imposición de responsabilidad sin que exista culpa, especialmente imponiendo responsabilidad por agencias (*agencies*) empleadas; (6) cambio de *res communes* y *res nullius* en *res publicae*; y (7) insistencia sobre el interés de la sociedad en el bienestar de los miembros dependientes de la familia.

Refiriéndose el mismo autor a las limitaciones impuestas al derecho de libre disposición de la propiedad, *ius disponendi,* dice más adelante:

"Las restricciones sobre el *ius disponendi* son principalmente estatutarias. Cuatro ejemplos pueden citarse: *la .disposición legal existente en muchos estados que requiere que la esposa concurra en la enajenación del hogar de la familia, aunque sea de la propiedad exclusiva del marido;* el fideicomiso de pródigos (*spendthrift trust*) algunas veces legislativo, pero generalmente de origen judicial; legislación que requiere el consentimiento de la esposa para que el marido pueda constituir una hipoteca sobre los muebles del hogar, aunque los mismos pertenezcan exclusivamente al marido, y legislación que requiere que la esposa concurra en la cesión del salario del marido." Obra citada, pág. 230.

Lo expuesto nos demuestra que un estatuto como el nuestro no hace otra cosa que seguir la tendencia de la legislación moderna a socializar el derecho, sacrificando como en este caso el derecho individual del padre en aras del bienestar de la familia, base de la sociedad.

Como la ley en vigor al tiempo de la venta verificada por Alsina a José Domingo Rivera exigía que para la transmisión del *homestead* consintiese expresamente la esposa, aquí demandada, al no concurrir ella en la escritura de enajenación y continuar ocupando la casa sin interrupción, primero en compañía de su marido y con su hijo después, su derecho de hogar seguro no fué enajenado y por lo tanto no puede privársele de ese derecho sin la compensación que determina la ley.

▮ Se sostiene por el apelante que la corte sentenciadora cometió error al desestimar la excepción previa por él interpuesta contra la contestación a la demanda.

Aceptamos que la contestación radicada por la representación de la demandada deja mucho que desear, pero de ella surge un hecho claro, que controvierte las alegaciones de la demanda e indicó claramente al demandante la posición de la demandada, y es que ésta reclamaba el derecho de

*homestead*. Hubiera sido mucho más correcto que la contestación no hubiese aceptado incondicionalmente, como lo hizo, todas las alegaciones de la demanda; pero como prescribe el artículo 122 del Código de Enjuiciamiento Civil (ed. 1933), "al considerar (interpretar) una alegación para determinar sus efectos, deberá interpretarse con liberalidad a fin de asegurar absoluta justicia entre las partes." Y en el presente caso las alegaciones de la contestación en manera alguna podían confundir o inducir a error a la parte demandante apelante.

Tratando de la moderna tendencia a echar a un lado los viejos formalismos e interpretar la ley liberalmente de manera que se haga completa justicia a las partes, dice el eminente Juez Cardozo:

"Vemos en acción el mismo proceso en otros campos del Derecho. No interpretamos ya los contratos adhiriéndonos estrictamente a la letra cuando ésta se halla en conflicto con su espíritu. Consideramos existentes obligaciones implícitas cuando podemos apreciar que las partes tuvieron la intención de consignarlas en el contrato, aunque las expresaron imperfectamente. La Ley ha salido ya de su primitiva etapa de formalismo cuando la palabra precisa era el talismán soberano y cualquier desviación era fatal. Es quizás en el campo del procedimiento donde hemos presenciado los cambios más importantes, aunque mayores han de venir. Las acusaciones y las alegaciones en casos civiles (*civil pleadings*) son interpretadas con liberalidad. Se va resolviendo cada vez con mayor frecuencia que las decisiones en cuestiones de evidencia descansan en la discreción del juez que preside el juicio. Los errores que pueda haber cometido la corte sentenciadora no dan lugar a revocación, con el consiguiente horror del nuevo juicio, a menos que la corte de apelación esté satisfecha que el error ha afectado el resultado. A veces ha sido necesario recurrir a la legislatura para romper los viejos moldes. En ocasiones el espíritu conservador de los jueces ha amenazado por algún tiempo la eficacia de tal legislación. Este peligro se puso de manifiesto en la actitud asumida por los tribunales hacia las reformas contenidas en los códigos de práctica en los días en que se originaron. Los precedentes que en aquellos tiempos se establecieron están todavía ejerciendo su desgraciada influencia. Mas, sin embargo, la tendencia actual es hacia un liberalismo cada vez mayor.

La nueva tendencia se ha abierto camino gradualmente y su progreso inadvertido paso a paso se advierte tendiendo la vista a la distancia recorrida. Quedan las viejas formas, pero se hallan animadas de un nuevo contenido. Estamos apartándonos de lo que Ehrlich llama 'die Sprelerische und die mathematische Eutscheidung', o sea el concepto de que un pleito es un problema de matemática o un deporte. Nuestro propio Wigmore ha hecho mucho para desterrar ese concepto. Pensamos ahora en la finalidad que la ley persigue y tratamos de que sus reglas conduzcan a la consecución de su propósito." Cardozo, *The Nature of Judicial Process*, pág. 100 *et seq.*

Por lo expuesto, opinamos que la corte sentenciadora no cometió error al desestimar la excepción previa a la contestación.

En el caso de *Arzuaga* v. *Ramírez,* 50 D.P.R. 106, se sostuvo que existiendo un derecho de *homestead* a favor del demandado, hasta que no se le pague o consigne en la corte el importe del hogar seguro, no surge a favor del demandante la causa de acción de desahucio. Y en el de *Franceschi* v. *Claudio Elena,* 51 D.P.R. 495, 503, se dijo:

"Considerando que la súplica del demandado apelante es compatible con la decisión en el caso de *Arzuaga* v. *Ramírez,* supra, y que es aceptable porque con ella se pone fin a la controversia entre las partes, se modifica la sentencia apelada en el sentido de reconocer que el demandado apelante tiene un derecho de hogar seguro sobre la casa que él y su familia ocupan en la finca de los demandantes, y decretando el desahucio solicitado previo pago por los demandantes al demandado de la suma de quinientos dólares, en satisfacción y pago de su derecho de *homestead.*

En el caso de autos, la situación es distinta de la que imperaba cuando se resolvió el de Claudio Elena, pues al fallarse este último en primera instancia, la ley de costas entonces en vigor dejaba su imposición a la discreción de la corte sentenciadora, mientras que el caso de autos fué resuelto al amparo de la vigente ley de costas, que impone a la corte sentenciadora la obligación de concederlas a la parte a cuyo favor se dicta la sentencia. De suerte que si en el presente caso, siguiendo el de *Franceschi* v. *Claudio*

*Elena,* supra, modificásemos la sentencia apelada en el sentido de declarar con lugar la demanda y decretar el desahucio solicitado previo pago por el demandante a la demandada de la suma de $500 en satisfacción de su derecho de *homestead,* necesariamente tendríamos que condenar en costas a la demandada, que en realidad es la parte victoriosa y no ha sido temeraria en la defensa de este pleito. Por consiguiente, siguiendo el caso de *Arzuaga* v. *Ramírez* y de acuerdo con la segunda alternativa de la súplica de la contestación, *procede desestimar el recurso y confirmar la sentencia apelada, sin perjuicio de que una vez consignado legalmente el valor del* homestead *o pagado directamente a la demandada, pueda establecerse de nuevo la acción de desahucio si fuere necesario.*

OPINION DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

La sección 3 de la Ley de Hogar Seguro (*homestead*) de marzo 12, 1903, provee:

"Que no será válida ninguna renuncia o traspaso de una finca así exentada, a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, su esposo o esposa, si él o ella lo tuvieren, o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso, o sin la orden de la corte de distrito disponiendo el traspaso del título de la propiedad, siempre que la exención se haga extensiva a un hijo o hijos."

Del contexto anterior se verá inmediatamente que las palabras "que no será válida ninguna renuncia . . . de una finca así exentada, a menos que se consigne expresamente en la escritura de traspaso por dicho jefe de familia, su esposo o esposa . . . o a menos que se obtuviere o abandonare la posesión de acuerdo con la escritura de traspaso" que la enajenación es válida si se obtiene o abandona la posesión de conformidad con lo pactado.

Es mi opinión que en Puerto Rico el dueño de un bien privativo puede entregar la posesión del mismo sin el consentimiento de su consorte; que al vender la propiedad, el

dueño puede abandonar la misma y poner al comprador en posesión y que ninguna protesta por parte de la esposa puede impedir al marido que ponga al comprador en tal posesión; y que bajo el derecho civil el domicilio de la familia lo determina prima facie el marido, y la mujer está obligada a seguirle. Las excepciones, a mi juicio, no tienen aplicación en este caso.

Ahora bien, no hay duda alguna de que el marido no trató de hacer en el presente caso esta clase de entrega de la posesión, abandonando la propiedad, sino que otorgó una escritura formal de sus bienes privativos en favor de José Domingo Rivera.

El artículo 1351 del Código Civil (edición de 1930), que es el 1365 del Código Civil (edición de 1911), provee:

"Se entenderá entregada la cosa vendida cuando se ponga en poder y posesión del comprador.

"Cuando se haga la venta mediante escritura pública, el otorgamiento de ésta equivaldrá a la entrega de la cosa objeto del contrato, si de la misma escritura no resultare o se dedujere claramente lo contrario."

El artículo 1351, supra, es absoluto en sus términos y el otorgamiento de una escritura formal equivale a la tradición material de la cosa.

A veces se habla del traspaso de la posesión de una finca mediante escritura como una entrega simbólica de la misma, más el Código no menciona tal entrega simbólica, sino que provee que la venta por escritura pública equivale a la entrega material de la posesión.

En *Fuertes* v. *Nogueras et al.*, 32 D.P.R. 284, dijimos:

"Pero aún sin existir un arrendamiento, si el comprador permite al vendedor seguir en posesión, el derecho a la posesión, o la posesión civil se transfiere."

Y se citó el artículo 1365 del Código. Lo que digo es que cuando se otorga una escritura formal, surgiría una de las excepciones enumeradas por la sección 3.

Cuando un marido opta absolutamente por vender sus bienes, sobre los cuales pudo haber tenido un derecho a hogar seguro y en la escritura no hace reserva alguna de tal derecho, él debe caer, de existir un hogar seguro, dentro de la excepción provista en la sección 3, supra. En el caso de autos no surgió ningún derecho independiente de la esposa y el único hogar seguro que había en aquel entonces existía en favor del marido. Y él, repito, tenía derecho bien a entregar la cosa materialmente o a otorgar una escritura de la misma, conforme lo hizo. Quizá se presentaría una situación distinta si el marido voluntariamente no hubiera otorgado una escritura; en otras palabras, si un acreedor, por existir una hipoteca o por algún otro motivo tratara de ejecutar los bienes contra la voluntad del marido.

Coadyuva a esta interpretación el título de la ley, a saber: "Ley para definir el *Homestead* (Hogar Seguro) y para exentarlo de una venta forzosa."

Otras cuestiones que cooperan en esta interpretación del estatuto son las siguientes:

La propiedad enajenada puede que valga menos de $500, y entonces el demandado que tratara de vender la totalidad de su finca privativa podría permanecer en posesión de la misma indefinidamente.

Sin embargo, no hay que profundizar demasiado en el asunto a no ser para considerar los hechos en sí del caso. Por la propiedad se pagó algo así como $1,600 y es de presumirse, como cosa corriente, que no valía más, sin excluir el derecho de hogar seguro; y que todo el que participó en la transacción creyó probablemente que hubo una enajenación completa de la finca. Luego no parece justo que la esposa, con posterioridad a la muerte de su marido, obtenga otros $500 por la finca.

El derecho de *homestead*, de acuerdo con la ley, es una finca (*estate*). La palabra ha sido tomada de fuentes estadounidenses. Transcurrida una tenencia vitalicia, frecuente-

mente una persona tiene la reversión de la propiedad. Tal reversión puede considerarse como una "finca." Igual sucede con un *contingent remainder* y con otras limitaciones. El derecho a esta "finca" de hogar seguro no se ejercita activamente hasta que surge la ocasión para ello. De ordinario es una exención contra los acreedores. El decir que el adquirente de una propiedad estableció en ella su hogar seguro, es un *petitio principii*. El hogar seguro es el remanente de un derecho de propiedad. No existe en un inmueble que ha sido enajenado por el acto del único dueño.