Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Jueza Asociada Señora Fiol Matta.
Disentimos de lo resuelto por una mayoría de este Tribunal por entender que en este caso la viuda tiene derecho a que se inscriba su derecho a hogar seguro sin que tengan que comparecer los hijos en el acta notarial. Somos del cri-terio que la Ley Núm. 195-2011 (31 LPRA sees. 1858-1858k) dispone que la protección de hogar seguro conti-nuará sobre el cónyuge supérstite independientemente de que el derecho estuviera inscrito previamente. Esto per-mite que la inscripción pueda ser realizada por la viuda que permanece utilizando la propiedad conyugal como su residencia principal.
En cambio, el efecto de la decisión mayoritaria es que la madre perderá su derecho de hogar seguro si los hijos no desean utilizar la propiedad de la comunidad hereditaria como su residencia principal o que los hijos perderán el derecho a hogar seguro sobre sus respectivas residencias principales para poder hacer valer el derecho a hogar se-guro de su madre. De cualquier forma, alguien perderá ese derecho. Por tal razón, disentimos y, en su lugar, revoca- *645 riamos la recalificación hecha por la Registradora de la Propiedad y permitiríamos la inscripción del acta notarial según presentada.
I
Los hechos de este caso no están en controversia. En síntesis, la Sra. Antonia Rivera García es la viuda del Sr. Alberto Rodríguez Salas. Tras el fallecimiento de este, la señora Rivera García se ha mantenido viviendo en lo que fue su hogar conyugal en Toa Alta. Además, esta pasó a ser codueña en común proindiviso de dicha propiedad junto a sus tres hijos.
El 2 de octubre de 2012, el notario Luis J. Marín auto-rizó un acta notarial en la cual la señora Rivera García requiere que se anote en el Registro de la Propiedad su derecho a hogar seguro al amparo de la Ley Núm. 195-2011. Al día siguiente, se presentó el acta en el Registro de la Propiedad. No obstante, la Registradora de la Propie-dad, Leda. Namyr I. Hernández Sánchez (Registradora) denegó la inscripción y notificó como falta que la propiedad pertenece a una comunidad hereditaria, por lo que los co-herederos debían consentir a esa transacción.
Inconforme con esta determinación, la señora Rivera García presentó un Escrito de Recalificación en el que ar-gumentó que la falta señalada es contraria a lo dispuesto en la Ley Núm. 195-2011, que en su Art. 9 (31 LPRA see. 1858f) permite que la comparecencia de uno de los cotitu-lares sea suficiente para solicitar el derecho a hogar se-guro; que requerir la comparecencia de todos los cotitula-res obstaculizaría el propósito de la ley de proteger el derecho de hogar seguro de la señora Rivera García y que por el tipo de derecho sui géneris de que se trata no hay objeción que pueda anteponer el resto de los coherederos.
El 17 de enero de 2013, la Registradora notificó la dene-gación del Escrito de Recalificación. Adujo que para que la *646 señora Rivera García reciba la protección de hogar seguro debe venir acompañada por el consentimiento expreso de los cotitulares a que este se anote a su favor aunque no se solicite la inscripción a nombre de todos los cotitulares, puesto que estos perderían el derecho de solicitarlo en sus propiedades, de acuerdo con el Art. 10 del estatuto, 31 LPRA sec. 1858g.(1)
Aun inconforme, la señora Rivera García acudió ante nos mediante un recurso gubernativo. Señaló que erró la Registradora al denegar la inscripción del acta notarial se-gún presentada. Oportunamente, la Registradora presentó su escrito.
II
La controversia que debemos resolver es si la señora Rivera García, como viuda del señor Rodríguez Salas, puede presentar un acta notarial en el Registro de la Pro-piedad en la cual solo comparece ella. Para llegar a una conclusión, es primordial analizar el contenido de la Ley Núm. 195-2011.
El derecho al disfrute de la propiedad está firmemente arraigado en nuestro ordenamiento jurídico. La Constitu-ción exige que las leyes determinen un mínimo de propie-dad y pertenencias no sujetas a embargo. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. En virtud de ese mandato ex-preso en nuestra Constitución, la Asamblea Legislativa ha desarrollado diversas leyes sobre el derecho a hogar seguro.
*647 En sus orígenes, el derecho a hogar seguro protegía cier-tas cantidades monetarias de embargo tras una sentencia o ejecución. Alo largo de los años, estas cantidades han ido aumentando de $500, cuando se aprobó la primera ley de 1903, hasta $15,000, tras una enmienda realizada en el 2003. Véanse: Ley Núm. 116-2003 (2003 (Parte 1) Leyes de Puerto Rico 492), Ley Núm. 87 de 3 de mayo de 1936 (1936 Leyes de Puerto Rico 461) y Ley de 12 de marzo de 1903 (1903 Leyes de Puerto Rico 107). Ahora bien, con la apro-bación de la Ley Núm. 195-2011 la Asamblea Legislativa entendió “conveniente aprobar una nueva legislación de vanguardia sobre hogar seguro que brinde una mayor pro-tección al hogar o residencia principal de todos los domici-liados en Puerto Rico y sus respectivas familias”. (Énfasis suplido). Exposición de Motivos de la Ley Núm. 195-2011. De hecho, señala con admiración el desarrollo del derecho a hogar seguro en estados como Florida y Texas donde se provee “una protección amplia para los hogares de sus re-sidentes de procedimientos de embargos y ejecuciones judiciales. Tal protección ha ayudado a que dichos estados se hayan convertido en lugares deseables para vivir y para el establecimiento de cientos de miles de puertorriqueños, en particular jóvenes profesionales”. íd.
Explicó la Asamblea Legislativa que el derecho a hogar seguro se trata de
[...] un asunto medular para la estabilidad de la institución más básica de nuestra sociedad y para cada puertorriqueño que con grandes sacrificios ha adquirido una residencia. De-bemos tener presente que para muchos puertorriqueños su ho-gar representa casi la totalidad de su patrimonio y lo único que pueden ofrecer a sus herederos. Así, la protección del ho-gar es de gran importancia para todos en Puerto Rico, desde el joven que con tanto anhelo compra su primera propiedad hasta el individuo retirado, que tanto luchó para mantener su propiedad. Exposición de Motivos de la Ley Núm. 195-2011.
Más aún, su propósito es “que cada ciudadano propieta-rio cuente con una protección básica ante el riesgo de ejecu- *648 ción de una sentencia en contra de su residencia”. (Énfasis suplido). íd. Así quedó plasmado en el Art. 2 de la ley: “[e]s política pública del Gobierno de Puerto Rico asegurar que todo individuo o jefe de familia domiciliado en Puerto Rico, goce de una protección que cobije la posesión y el disfrute de su residencia principal contra el riesgo de ejecución de esa propiedad”. (Énfasis suplido). Art. 2 de la Ley Núm. 195-2011 (31 LPRA sec. 1858n).
Por ello, la nueva ley de hogar seguro cambió el enfoque monetario a una protección sobre la totalidad de la propiedad. Con esta intención de proteger la residencia principal de cada ciudadano, el legislador cumplió su pro-pósito de una mayor protección del derecho de hogar seguro. En específico, el Art. 3 claramente dispone qué es el derecho a hogar seguro y quién es su acreedor. El mismo establece que
[t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la es-tructura enclavada en el mismo, o una residencia bajo el régi-men de la Ley de Condominios que le pertenezca o posea le-galmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal. 31 LPRA see. 1858.
De ahí podemos colegir que toda persona es acreedora al derecho de hogar seguro si (1) le pertenece o posee legal-mente una propiedad y (2) es su residencia principal. No obstante, toda persona tiene derecho a tener solamente un hogar seguro. Véase 31 LPRA sec. 1858g. De lo contrario incurriría en delito. Id.
Al ser acreedor del derecho a hogar seguro, una persona queda protegida de embargo, sentencia o ejecución ejerci-tada para el pago de todas sus deudas. 31 LPRA see. 1858b. Asimismo, el estatuto establece que esta protección “subsistirá después de la muerte de uno de los cónyuges a beneficio del cónyuge supérstite mientras éste continúe ocu-pando dicho hogar seguro, y después de la muerte de am-bos cónyuges a beneficio de sus hijos hasta que el menor de *649 éstos haya alcanzado la mayoría de edad”. (Énfasis suplido). Art. 6 de la Ley Núm. 195-2011 (31 LPRA see. 1858c). Es decir, la ley establece expresamente que el de-recho de hogar seguro, en el caso de un matrimonio, opera automáticamente a favor del cónyuge que sobrevive, siem-pre que este se mantenga ocupando la propiedad como su residencia principal. O sea, este artículo de la ley está de-signado para proteger en primer lugar al cónyuge supérs-tite por encima incluso de los hijos.
Sobre el Art. 3 de la ley de hogar seguro de 1936 —Ley Núm. 87 de 3 de mayo de 1936 (31 LPRA ant. see. 1853) — , que disponía de la misma forma sobre el derecho del cón-yuge supérstite,(2) este Tribunal expresó que este es uno de los casos en que por mandato del legislador la equidad se incorpora como parte del Derecho positivo. Cruz Cruz v. Irizarry Tirado, 107 DPR 655, 660 (1978). Además, aclara-mos que esto no se ve afectado por tratarse de una propie-dad de unos dueños en común proindiviso. En López Rudón v. López, 48 DPR 324, 330 (1935), sostuvimos que
[e]n cuanto a la posesión de la propiedad, se ha sostenido que no es necesario que sea exclusiva para que el condómine pueda constituir su homestead. Realmente no conocemos nin-guna razón de peso que haga necesaria la posesión exclusiva. [•••]
El derecho de homestead puede ser reconocido en favor de la viuda, sin lesionar los derechos de [otra codueña], quien con-serva su condominio. (Citas omitidas).(3)
*650 Por otro lado, la Ley Núm. 195-2011 provee para que este derecho se inscriba en el Registro de la Propiedad. En aquellas situaciones donde la finca estuviese inscrita pero el derecho a hogar seguro no, la ley dispone que
[...] bastará que el propietario o propietarios de la finca otor-gue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registra-dor de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente.
Ambos documentos, la escritura de adquisición y el acta, según sea el caso, deben expresar el uso residencial de la pro-piedad, y que el propietario no ha designado como tal, ninguna otra propiedad en o fuera de Puerto Rico (Enfasis suplido). Art. 9 de la Ley Núm. 195-2011, supra.
Es decir, los documentos estarán redactados de acuerdo con el propietario o propietarios que tengan allí su residen-cia principal. Nuevamente, la ley solo exige que la persona que desee inscribir su derecho de hogar seguro sea propie-taria o posea legalmente la propiedad y que esa sea su residencia principal.
Cabe resaltar que la ley no requiere que este derecho esté inscrito. Particularmente, el Art. 11 de la Ley Núm. 195-2011 declara que
[e]l hecho de que una finca no esté inscrita en el Registro de la Propiedad o que el derecho a hogar seguro no esté inscrito o anotado en el Registro de la Propiedad, en nada afecta el de-recho de hogar seguro que en ella tenga su propietario, siempre y cuando el derecho sea levantado oportunamente conforme a lo dispuesto en [el Artículo 12 de esta ley.\ (Enfasis suplido). 31 LPRA sec. 1858h.
Al respecto, el Art. 12 del estatuto provee el mecanismo para solicitar el derecho a hogar seguro mediante una mo- *651 ción presentada ante el tribunal dentro de un procedi-miento de venta por sentencia o ejecución. Incluso, hemos reconocido que ni siquiera la propiedad tiene que estar ins-crita a favor de la persona que reclama su derecho de ho-gar seguro. 31 LPRA sec. 1858i. En efecto, en Irizarry v. García, 58 DPR 280, 284 (1941), cuando la ley no permitía la inscripción del derecho de hogar seguro mediante acta notarial, expresamos que el hecho de que la propiedad no se inscribiera a nombre de la sociedad de gananciales hasta una fecha posterior no destruye el derecho de hogar seguro que ya existía a favor del demandante.
III
Expuesto lo anterior, podemos identificar que la Ley Núm. 195-2011 provee expresamente que la protección de hogar seguro del cónyuge supérstite opera de forma auto-mática tras la muerte del otro cónyuge. Por ello, entende-mos que la señora Rivera García tiene derecho a la protec-ción de hogar seguro según lo dispuesto en el Art. 6, supra. Esto, independientemente de que el derecho a hogar se-guro no estuviese inscrito previamente en el Registro de la Propiedad. Véase Art. 11, supra.
Además, sostenemos que esta podrá oponer su derecho contra sus acreedores de dos formas, mediante la inscrip-ción en el Registro de la Propiedad o mediante la presen-tación oportuna de una moción ante el tribunal.(4) Por esto, entendemos que la viuda puede requerir a un notario que le autorice un acta notarial aunque la propiedad perte-nezca a una comunidad hereditaria, pues esta es propieta-ria y utiliza la propiedad como su residencia principal. Además, reiteraríamos que el derecho de hogar seguro que *652 dispone la Ley 195-2011 a favor del cónyuge supérstite no puede ser afectado por el hecho de que la propiedad ahora pertenezca a varios dueños en común proindiviso. Véase López Rudón v. López, supra.
Por lo tanto, ningún comunero puede oponerse a que se inscriba el derecho de hogar seguro a favor del cónyuge supérstite que utiliza la propiedad como su residencia principal. Entonces, tampoco podríamos requerirle que consientan a una transacción que no pueden objetar, según sugirió la Registradora. Menos aún podemos ordenar que se inscriba el derecho de hogar seguro a nombre de todos los comuneros, aun cuando estos no residan en la propie-dad, como resuelve la mayoría de este Tribunal. Recorde-mos que residir en la propiedad es un requisito para ser acreedor del derecho de hogar seguro. En consecuencia, esto obliga al resto de los comuneros a decidir entre prote-ger la residencia de su pariente que sobrevivió o negarse a la inscripción para poder tener la protección de hogar se-guro en su residencia principal. Es legítimo pensar que cada comunero preferirá tener su residencia principal protegida. Quizás, el efecto más claro del proceder mayori-tario es que las propiedades que pertenezcan a comunida-des hereditarias compuestas por un viudo o viuda e hijos mayores de edad no tendrán la protección de hogar seguro, pues nunca alcanzarán un consenso al respecto. Irónica-mente, quien más pierde con este resultado sería la viuda, quien es la primera persona protegida en la ley y quien podría quedar desamparada si al menos uno de sus tres hijos se opone a inscribir la residencia en cuestión como hogar seguro.
En este sentido, la Opinión mayoritaria frustra el texto claro de la ley en varios aspectos al no reconocer el derecho a hogar seguro de la viuda aun cuando no estuviese inscrito. Más aún, deja a un lado la intención del legislador de dar una mayor protección a cada propietario “desde el joven que con tanto anhelo compra su primera propiedad *653 hasta el individuo retirado, que tanto luchó para mantener su propiedad”. Exposición de Motivos de la Ley Núm. 195-2011. Es evidente que el propósito de la ley es proteger el derecho de la viuda y que, a su vez, cada hijo tenga la oportunidad de tener su residencia principal protegida.
En virtud de lo anterior, es forzoso concluir que para hacer valer esta intención y el texto claro de la Ley Núm. 195-2011 bastará con que la viuda, como copropietaria que utiliza la propiedad como su residencia principal, pueda comparecer ante el notario para requerir que se inscriba su derecho de hogar seguro. Por todo lo cual, no podemos ava-lar el proceder mayoritario, y permitiríamos la inscripción del acta notarial presentada por la señora Rivera García según presentada.

 Dicho artículo establece que
“[i]neurrirá en delito grave de cuarto grado, toda persona que intente o logre inscribir en el Registro de la Propiedad la protección de hogar seguro en más de una finca de su propiedad o intente o logre inscribir a favor de otra persona la protección de hogar seguro, a la que ésta no tuviere derecho. Además, en los casos donde la persona se encuentre culpable de tal delito, ésta no tendrá derecho a hogar seguro sobre ninguna de las propiedades objeto de su actuación ilegal”. Art. 10 de la Ley Núm. 195-2011 (31 LPRA sec. 1858g).

 El artículo disponía:
“(l]a exención establecida en la sección anterior continuará subsistente después de la muerte del jefe de familia a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro, y después de la muerte de ambos cónyuges a beneficio de sus hijos hasta que el menor de éstos haya llegado a la mayoridad. En casos de que el marido o la mujer abandonase su familia la exención continuará a favor del cónyuge que ocupe la finca como residencia; y en caso de divorcio el tribunal que lo conceda deberá disponer del'hogar seguro según la equidad del caso”. 31 LPRA ant. see. 1853.

 Igualmente, si auscultamos en las jurisdicciones de Florida y Texas como lo hizo el legislador, podemos identificar que en esos estados tampoco es necesaria la inscripción en el Registro de la Propiedad, previo a la muerte del causante, para que el cónyuge supérstite reclame su derecho a hogar seguro. Véanse, con relación al estado de Florida: FI Sta Sec. 196.031(1)(a) (2011); Fl Sta Sec. 732.401(5) (2011); City *650 Nat. Bank of Florida v. Tescher, 578 So.2d 701, 703 (1991) (“only the decedent’s husband falls within the class which the constitution intended to protect, and only the husband was entitled to the protection of article X, section 4(c)”). Véase, además, sobre Texas: Tex. Prob. Code Ann. Sec. 283-284 (1956); Riley v. Riley, 972 S.W.2d 149 (Tex. App.-Texarkana 1998, no pet.) (“The homestead right protects the survivors homestead from forced sale by creditors and from partition among the heirs and beneficiaries of the homestead claimant”).

 En California también existe un derecho a hogar seguro dual, el cual se puede establecer automáticamente por ley o por declaración. Véanse: Cal. Civ. Proc. Code Sec. 704.720(a) (West 2008); Cal. Civ. Proc. Code Sec. 704.920 (West 2008). Véase, además, In re Mulch, 182 B.R. 569, 573 (Bankr. N.D. Cal. 1995).